## Hale v. Chesapeake & Ohio Ry. Co.

### (Decided March 18, 1911.)

### Appeal from Lawrence Circuit Court.

Separate Coach Law—Insults by White Passengers to Colored Passengers.—Appellant, a colored passenger, was in the coach for colored passengers. A white passenger came into the apartment, threw some water on the floor and took a seat behind appellant. The conductor came into the coach and notified the white passenger to leave. At the time the white passenger was not boisterous, or disorderly, and readily acquiesced in the conductor's suggestion. The conductor then went to the ladies' car to take up tickets. He had previously told appellant if any white men bothered her to let him know. While he was gone the white passenger returned and insulted appellant. Held that as the conductor and no one else knew of the white passenger's presence in the colored apartment the company was not liable under the separate coach law. Nor was it liable under its general duty to protect passengers. The person complained of was not guilty of any disorderly or boisterous conduct in the presence of the company's employes, nor did he indicate in any manner that his condition was such that unless restrained or ejected from the train he might offer insult or violence to other passengers.

W. D. O'NEAL, JR., for appellant.

WORTHINGTON, COCHRAN & BROWNING, F. T. D. WALLACE and M. C. KIRK for appellee.

Opinion of the Court py William Rogers Clay, Commissioner—Affirming.

The appellant, Mary E. Hale, a colored woman, claiming that she was subjected to insults and indignities at the hands of a drunken white passenger, who came into the colored compartment where she was seated, brought this action against appellee, Chesapeake & Ohio Railway Company, to recover damages. At the conclusion of the testimony the court peremptorily instructed the jury to find for the railway company. To review the propriety of that ruling, this appeal is prosecuted.

Appellee owns and operates a line of railway from Catlettsburg, Kentucky, to Louisa, Kentucky. On April 14, 1909, appellant purchased at Catlettsburg a ticket which entitled her to transportation over appellee's line from that point to Louisa. On boarding the train the conductor assigned her to the car provided for colored passengers. When she entered the car there was no other passenger therein. Soon after the train left Catlettsburg two white men entered the car where appellant was seated. Appellant claims that both of these men were drunk. When the first one came in he took a drink of water, came back near appellant, and "hollered." Presently the train stopped and the second man came into the car where she was and threw water in the aisle. He then sat down in the second seat behind appellant. Soon after he took his seat the conductor came in and touched him on the shoulder, calling his attention to a sign which indicated that the car in which he was seated was set apart for colored passengers. The white man immediately got up and went out of the car. Appellant then motioned the conductor to come to her. She told him that she wanted him to keep those drunken men out of there; that she was afraid of them and did not want to be left there by herself. The conductor assured her that they would not bother her any more, and further told her that if they did bother her, to report to him; that he had to go back in the ladies' car, and then proceeded in that direction. The train had gone only a short distance when the man whom the conductor had ejected from the colored compartment returned. Appellant never saw him come in. At the time she was seated with her arm on the window sill. The white passenger sat down beside her and put his arm around her. He then said to her, "Where are you going, gal?" Appellant told him

to let her alone, and immediately got up and pulled the bell-cord. The train then stopped. The conductor and two or three others immediately came to the colored compartment, and inquired what was the matter. At the time of the occurrence appellant was not well and had been under the care of a physician for heart trouble and nervousness. She slept but little the following night and was restless and nervous for several days afterwards. After the occurrence the conductor, in company with one of appellee's attorneys, asked appellant to come back and identify the man. A man who had on overalls was ejected from the train. Appellant was of opinion he was not the man who had insulted her. She, however, failed to identify the man who had insulted her.

A. O. Carter, the only other witness who testified in the case, stated that he was a passenger on the train at the time. The train suddenly stopped. He saw a man come out of the colored compartment and take a seat immediately in front of him. He seemed to be drunk. Witness told the conductor there was the man he was looking for. Witness thought he was the man, because he seemed suddenly to fall asleep and witness did not think the man was so sound asleep as he pretended to be.

It will be seen from the evidence that the only time the conductor knew of the presence of any white man in the colored compartment was when he went into the car and found a white man seated behind appellant. At that time the white man was not engaged in any boisterous conduct and there was absolutely nothing in his manner to indicate that any passenger was in danger from insult at his hands. As soon as the conductor called his attention to the fact that he was in the car set apart for colored passengers, the white man, without objection, left the car. Having acquiesced in the suggestion of the conductor, that he leave the colored compartment, and not being disorderly or boisterous at the time, the conductor, of course, was not authorized to put the passenger off the train; nor was there anything in the white passenger's manner that would indicate to the conductor that he would return to the colored compartment. When he did return, the conductor was in the ladies' coach, and it is not shown that he or any other employe had notice of the white passenger's presence in the colored compartment. The facts of this case show that the conductor, when he did have notice of the presence of the white pas-

senger in the colored compartment, acted with all reasonable promptness and dispatch.

The rule in this State, so far as a violation of the separate coach law is concerned, is thus stated in Quinn, et al., v. Louisville & Nashville R. R. Co., 98 Ky., 231:

"If, as we shall assume was the case, each one of the passengers had been assigned the coach required by the statute, and the white passenger had left his coach and gone into the coach with these colored people without the knowledge of the conductor while he was attending to his duties in the other cars, and had there abused and insulted the appellant, it is plain no action could be maintained against the company, but when the white passenger is assigned to the car set apart for those of another race the company will be held responsible for his bad conduct affecting the rights of other passengers, although the conductor may be ignorant of what is transpiring, and where the conductor or those managing the train know that one is in the wrong car, it is his duty to expel him, and by consenting to his remaining the company becomes responsible for his conduct so long as he does remain."

The same doctrine was followed and applied in the case of Wood, et al., v. Louisville & Nashville R. R. Co., 101 Ky., 703; see also Louisville & Nashville R. R. Co. v. Renfro's Admr., 142 Ky., 590.

Applying the above rule to the facts of this case, we fail to see wherein appellee is liable.

But it is insisted that, independent of the separate coach law, appellee is liable because it failed in its duty to use, for the protection of appellant, who was its passenger, the utmost care and skill which prudent men are accustomed to use under similar circumstances. In this connection, it is insisted that the conductor's attention was called to the fact that the man was drunk, and that by the exercise of such degree of care he might have anticipated that the white passenger would have been guilty of the conduct complained of. The only claim of the white passenger's conduct prior to the time of the insult was that he threw some water on the floor. Appellant does not even claim that she reported this fact to the conductor. She does not claim that, at the time the conductor came into the coach and required the white passenger to leave, the white passenger was then acting in such a manner that the conductor could reasonably

apprehend therefrom that he would return to the colored compartment and attempt to insult any passenger therein. It is not every case where a passenger has been drinking that the conductor is authorized to assume that he will offer violence or insult to the other passenger. If he becomes violent or disorderly, or is wandering about the train, and indicates by his manner that insult or violence will naturally follow unless prompt and efficient action be taken by those in charge of the car to restrain him or put him off the train, the company, under such circumstances, may be liable for his bad conduct. In this case, however, no facts appear from which it could be reasonably inferred that the white passenger would be guilty of the insult which he subsequently offered.

Upon the whole case, we fail to see what the company's agent could have done that was not done, except to station a man at the door of the colored compartment to prevent the white passengers entering that compartment; and, as the white passenger complained of readily acquiesced in the conductor's suggestion, that he leave the colored compartment, and did not in any way indicate by word or act that he would return, and did not show that his condition was such that, unless ejected from the car or restrained in some way, he would offer violence or insult to any other passengers, it does not appear that, in the exercise of the utmost degree of care and skill that ordinarily prudent persons would exercise under similar circumstances, such precautions were reasonably necessary for the protection of appellant.

Judgment affirmed.